UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH MASLOWSKI,

    Plaintiff,

Case No. 1:12-cv-514

Hon. Robert J. Jonker

v.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is now before the court on defendants' motion to dismiss plaintiff's amended complaint pursuant to Fed. Rules Civ. Proc. 12(b)(6) (docket no. 40).

**I.    Background**

On or about April 19, 2012, plaintiff filed a *pro se* complaint in the Grand Traverse County Circuit Court which sought to set aside a foreclosure and foreclosure sale. *See* Compl. (docket no. 1-1). Defendants' removed the state action to this Court on May 18, 2012. *See* Notice of Removal (docket no. 1). Plaintiff subsequently obtained counsel, who filed a First Amended Complaint setting forth the following allegations. Amend. Compl. (docket no. 39). On March 21, 2006, plaintiff obtained a loan (the "Loan") in the amount of $170,800.00 from defendant Countrywide Home Loans, Inc. ("CHL"), also known as America's Wholesale Lender ("AWL"), to purchase property commonly known as 412 W. 16th Street, Traverse City, Michigan 49684 (the "Property"). First Amend. Compl. (docket no. 39) at ¶¶ 3 and 8; Adjustable Rate Note (docket no. 41-1). As security for the Loan, plaintiff granted a mortgage (the "Mortgage") to defendant

Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for AWL. First Amend. Compl. at ¶¶ 8-9; Mortgage and Adjustable Rate Rider (docket no. 39 at pp. 11-21 and docket no. 41-2). The Mortgage was recorded on March 29, 2006 with the Grand Traverse County Register of Deeds. *Id.*

Plaintiff alleged, upon information and belief, that defendant Bank of America, N.A. ("BOA") dissolved CHL a/k/a AWL on March 5, 2008. *Id.* at ¶¶ 12 and 22.[1] Because CHL a/k/a AWL was dissolved, it did not have any standing to assign ownership rights through its nominee, MERS. *Id.* at ¶¶ 22-23.

In March 2010, plaintiff "became unable to make his mortgage payments and went into default on the same." *Id.* at ¶ 15. More than one year later, in an assignment dated July 21, 2011 (the "Assignment of Mortgage"), MERS assigned the Mortgage to Bank of New York Mellon f/k/a The Bank of New York, as trustee for the Certificateholders of CWABS Inc., Asset-Backed Certificates, Series 2006-7 ("BONY"). First Amend. Compl. at ¶¶ 10-11; Assignment of Mortgage (docket no. 39 at p. 23 and docket no. 41-3). The Assignment of Mortgage was recorded on July 22, 2011. *Id.* Plaintiff alleged that because CHL a/k/a AWL was dissolved, MERS did not have authority to make this assignment. First Amend. Compl. at ¶¶ 21-24. Plaintiff also alleged that MERS lacked authority to assign the Mortgage to BONY, because under the Pooling and Servicing Agreement for CWABS Asset Backed Certificates 2006-7 (the "PSA"), which was the instrument

---

[1] The Court notes that both parties have submitted documentation regarding the status of CHL. Plaintiff's First Amended Complaint included a print-out from the internet site for the California Department of Corporations which states that CHL was no longer licensed as of March 5, 2008. *See* Printout (docket no. 39 at p. 25). Defendants' Motion to Dismiss included a copy of a "Business Entity Detail" from the California Secretary of State that as of December 28, 2012, CHL was an "active" corporation. *See* Business Entity Detail (docket no. 43-1). For purposes of this motion, the Court will accept plaintiff's allegation as true. *See* discussion in §§ II and III, *infra*.

used by BONY to hold the Mortgage Backed Security, BONY could not accept an assignment after June 1, 2006. *Id.* at ¶¶ 24-27.

Plaintiff defaulted on the Loan and BONY initiated foreclosure proceedings pursuant to M.C.L. § 600.3204(1)(d). First Amend. Compl. at ¶¶ 15 and 20. On September 15, 2011, BONY began publishing notices of the sheriff's sale. *Id.* at ¶ 15; Sheriff's Deed (docket no. 39 at pp. 36-237 and docket no. 41-4). BONY purchased the Property at a Sheriff's Sale on October 19, 2011. *Id.* The redemption period expired on April 19, 2012. First Amend. Compl. at ¶ 18. Plaintiff did not redeem the Property. *Id.*

The First Amended Complaint sets forth three counts. In Count I, "Illegal/Improper Foreclosure," plaintiff alleged that the foreclosure was improper because MERS did not have authority to assign the Mortgage to BONY. *Id.* at ¶¶ 19-29. MERS lacked authority to assign the Mortgage to BONY because, under the terms of the PSA, BONY could not accept an assignment after June 1, 2006. *Id.* at ¶¶ 24-27. Plaintiff contends that the foreclosure was illegal or improper because BONY was not the owner of the note or indebtedness and did not have standing to foreclose under M.C.L. § 600.3204(1)(d). *Id.* at ¶¶ 19-29. Plaintiff's requested relief includes a court order to "invalidate/void the foreclosure and the Sheriff's Sale," costs, attorney fees and unspecified equitable relief. *Id.* at p. 6.

In Count II, "Fraudulent Transfer of Mortgage as to defendants MERS, CHL and BOA", plaintiff alleged that the Assignment of Mortgage was fraudulent, because MERS knew or should have known that the assignment was illegal "as CHL's defunct status was public knowledge." *Id.* at ¶¶ 30-33. Plaintiff alleged that "MERS intentionally misrepresented the fact that it could not legally assign the Mortgage with the expectation that [plaintiff] would believe that BONY was now

the holder of his Mortgage." *Id.* at ¶ 34. As a result of MERS alleged fraudulent transfer of the Mortgage to BONY, plaintiff claims that he suffered the following damages: possibility of losing his home to an "improper foreclosure"; loss of all equity in his home; loss of ability to alienate his property; deprivation from the normal use and enjoyment of his home and property; and costs of attempted modification with an unnamed "improper party". *Id.* at ¶ 36. As with Count I, plaintiff's requested relief includes a court order to "invalidate/void the foreclosure and the Sheriff's Sale," costs, attorney fees and unspecified equitable relief. *Id.* at p. 7.

In Count III, "Fraudulent Transfer of Mortgage as to defendant BONY," plaintiff alleged that BONY made a false representation that it had legal standing to accept the assignment of the Mortgage on July 21, 2011, when in fact it did not, because under the terms of the PSA, BONY had to receive the assignment by June 1, 2006. *Id.* at ¶¶ 38-42. As in Count II, plaintiff claims that he suffered the following damages: possibility of losing his home to an "improper foreclosure"; loss of all equity in his home; loss of ability to alienate his property; deprivation from the normal use and enjoyment of his home and property; and costs of attempted modification with an unnamed "improper party". *Id.* at ¶ 43. As with the other counts, plaintiff's requested relief includes a court order to "invalidate/void the foreclosure and the Sheriff's Sale," costs, attorney fees and unspecified equitable relief. *Id.* at pp. 7-8.

### II. Standard of Review

Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6). A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic*

4

*Corporation v. Twombly*, 550 U.S. 544, 555 (2007). *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief"). A plaintiff's obligation to provide the defendants with a statement of his claim is obligated to provide "more than labels and conclusions." *Id.* Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In addition, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. Plaintiff's Claims

The Property was foreclosed by advertisement pursuant to M.C.L. § 600.3204, which provides that a foreclosure by advertisement may occur if "[t]he party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage." *See* M.C.L. § 600.3204(1)(d). The crux of plaintiff's claims with respect to all three counts of his First Amended Complaint is that the state foreclosure

5

proceedings should be invalidated because MERS lacked the capacity to assign the Mortgage and BONY could not accept the MERS' Assignment of Mortgage.

Plaintiff alleged that the redemption period expired on the same day he filed this action in the state court. First Amend. Compl. at ¶ 18. The filing of this action, however, did not toll the redemption period. *See Conlin v. Mortgage Electronic Registration Systems, Inc.*, 714 F.3d 355, 360 (6th Cir. 2013) (under Michigan law, the filing of a lawsuit is insufficient to toll the redemption period in a foreclosure by advertisement). In *Conlin*, the Sixth Circuit discussed the high standard which a plaintiff must meet to have a federal court invalidate or set aside a mortgage foreclosure by advertisement in Michigan after the redemption period has expired:

> Non-judicial foreclosures, or foreclosures by advertisement, are governed by statute under Michigan law. *Munaco v. Bank of America*, ––– Fed.Appx. –––, –––, No. 12–1325, 2013 WL 362752, at *3 (6th Cir. Jan. 31, 2013) (citing Mich. Comp. Laws § 600.3204 and *Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 503 N.W.2d 639, 641 (1993)). While the statutory scheme provides certain steps that the mortgagee must go through in order to validly foreclose, *id.*, it also controls the rights of both the mortgagee and the mortgagor once the sale is completed, *Williams v. Pledged Prop. II, LLC*, 508 Fed. Appx. 465, 467–68, No. 12–1056, 2012 WL 6200270, at *2 (6th Cir. Dec. 13, 2012) (citing *Senters*, 503 N.W.2d at 641). The statutes provide the mortgagor six months after the sheriff's sale in which to redeem the property. Mich. Comp. Laws § 600.3240(8); *see also Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949, 951 (6th Cir.2012). Once this statutory redemption period lapses, however, the mortgagor's "right, title, and interest in and to the property" are extinguished. *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 4 N.W.2d 514, 517 (1942); *see* Mich. Comp. Laws § 600.3236.

> Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties. *See Mills v. Jirasek*, 267 Mich. 609, 255 N.W. 402, 404 (1934) (citing *Reading v. Waterman*, 46 Mich. 107, 8 N.W. 691, 692 (1881)); *see also Gordon Grossman Bldg. Co. v. Elliott*, 382 Mich. 596, 171 N.W.2d 441, 445 (1969). To effectuate this interest in finality, the ability for a court to set aside a sheriff's sale has been drastically circumscribed. *See Schulthies v. Barron*, 16 Mich.App. 246, 167 N.W.2d 784, 785 (1969); *see also Senters*, 503 N.W.2d at 643. Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor

6

> has made "a clear showing of fraud, or irregularity." *Schulthies*, 167 N.W.2d at 785; *see also Sweet Air Inv., Inc. v. Kenney*, 275 Mich.App. 492, 739 N.W.2d 656, 659 (2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside." (internal quotation marks omitted)). Whether the failure to make this showing is best classified as standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period. *See El–Seblani v. IndyMac Mortg. Servs.*, 510 Fed.Appx. 425, 429–30, No. 12–1046, 2013 WL 69226, at *4 (6th Cir. Jan. 7, 2013).
>
> It is further clear that not just any type of fraud will suffice. Rather, "[t]he misconduct must relate to the foreclosure procedure itself." *Id.* (citing *Freeman v. Wozniak*, 241 Mich.App. 633, 617 N.W.2d 46, 49 (2000)); *see also Williams*, 508 Fed.Appx. at 468–69, 2012 WL 6200270, at *3 (citing *Heimerdinger v. Heimerdinger*, 299 Mich. 149, 299 N.W. 844, 846 (1941), and *Sagmani v. Lending Assocs. LLC*, No. 302865, 2012 WL 3193940, at *1 (Mich.Ct.App. Aug. 7, 2012)).

*Conlin*, 714 F.3d at 359-60 (footnotes omitted).

In addition to showing fraud related to the foreclosure procedure itself, a plaintiff seeking to set aside a foreclosure after the expiration of the redemption period must show that he was prejudiced by the defendant's failure to comply with the requirements of the foreclosure statute. *Id.* at 361. To demonstrate such prejudice, a plaintiff must show that he would have been in a better position to preserve his interests in the property absent the fraud (e.g., that the plaintiff would incur a double liability due to the fraud or that he lost a potential opportunity to preserve his interest in the property). *Id.* at 361-62. Here, because plaintiff did not redeem the property during the statutory redemption period under Michigan law, the issue before this Court is whether his amended complaint has alleged "a clear showing of fraud, or irregularity" which "relate[s] to the foreclosure procedure itself" and that he was prejudiced by the alleged fraud. *Id.* at 360-62.

As discussed, plaintiff alleged that the Assignment of the Mortgage from MERS to BONY was either invalid (Count I) or fraudulent (Counts II and III). Plaintiff's claim in the present

7

case, that MERS could not assign the mortgage and BONY could not accept an assignment or foreclose the property under M.C.L. § 600.3204(1)(d), is similar to a claim raised in *Conlin*, i.e., that the defendant U.S. Bank was not eligible to foreclose the property because U.S. Bank was not the note-holder, mortgage-holder, or servicer as required under M.C.L. § 600.3204(1)(d). *Conlin*, 714 F.3d at 360. Like plaintiff, one basis for the plaintiff's claim in *Conlin* was that MERS had no capacity to assign the mortgage to U.S. Bank. The court addressed the issue in pertinent part as follows:

> In *Livonia Properties*, this Court addressed a somewhat similar issue. In that case, the foreclosed-on party (Livonia Properties) asserted that the foreclosing party (Farmington Holdings) did not have the ability to foreclose on it because a prior assignment in the record chain of title between Lehman Brothers and a trust, which later validly assigned to Farmington Holdings, "may be invalid because the Trust did not actually exist" at the time of the assignment from Lehman Brothers. *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 Fed.Appx. 97, 102 (6th Cir.2010). We noted there that as a third party to the assignment, "[e]ven if there were a flaw in the assignment, Livonia [Properties] does not have standing to raise [it]." *Id.* This is because a third party may only challenge an assignment if that challenge would " 'render[ ] the assignment absolutely invalid or ineffective, or void.' " *Id.* (citing 6A C.J.S. Assignments § 132).
>
> Recently, in *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329 (2012), the Michigan Supreme Court made clear that failure to comply with the conditions set forth in Michigan's foreclosure-by-advertisement statute does not render flawed foreclosures void (i.e., void *ab initio*) but merely voidable. [FN6] *Id.* at 337. The precise issue in *Kim* was whether the mortgagee's failure to record its interest before the initiation of foreclosure proceedings, as required by Mich. Comp. Laws § 600.3204(3), rendered the subsequent sheriff's sale void *ab initio*. [FN7] *Id.* at 331, 336. However, in the course of holding that a subsection (3) defect rendered a foreclosure merely voidable, the Michigan Supreme Court rejected the analysis of a case that dealt with a subsection (1)(d) defect, *Davenport v. HSBC Bank USA*, 275 Mich.App. 344, 739 N.W.2d 383 (2007)—the same defect that Plaintiff is claiming in this case. *Kim*, 825 N.W.2d at 336–37.
>
> In *Davenport*, the Michigan Court of Appeals held that the fact that the foreclosing defendant "had initiated the foreclosure proceeding several days before acquiring its interest in the mortgage. . . rendered the foreclosure proceedings void *ab initio*." Id. at 336 (citing *Davenport*, 739 N.W.2d at 384–85). Interpreting

8

*Davenport* in *Kim*, the Michigan Supreme Court bluntly stated that "such a holding was contrary to the established precedent of this Court. We have long held that defective mortgage foreclosures are voidable." *Id.* at 336. Therefore, the Michigan Supreme Court broadly held that "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*." *Id.* at 337. It then explained that to prove foreclosure-defect claims, "plaintiffs must show that they were prejudiced by defendant's failure to comply with [Mich. Comp. Laws §] 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* (citing *Sweet Air*, 739 N.W.2d at 662, and *Jackson Inv. Corp. v. Pittsfield Prods., Inc.*, 162 Mich.App. 750, 413 N.W.2d 99, 101–02 (1987)).

*Kim's* holding makes § 600.3204 defects actionable to the same extent that notice defects under Mich. Comp. Laws § 600.3208 are—only on a showing of prejudice. We explained the actionability of notice defects under § 600.3208 in *Lessl v. CitiMortgage, Inc.*, ——Fed.Appx. ——, No. 11–2285, 2013 WL 610904 (6th Cir. Feb. 19, 2013): "When 'the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property,' courts uphold a completed foreclosure sale." *Id.* at ——, 2013 WL 610904 at *1 (quoting *Jackson*, 413 N.W.2d at 101) (citing *Sweet Air*, 739 N.W.2d at 662). *Lessl* involved a mortgagor's claim to set aside a sheriff's sale based on an alleged failure to post notice on his property. *Id.* We affirmed the district court's dismissal of the claim because the mortgagor had received actual notice of the foreclosure in the form of a letter from the foreclosing party. *Id.* at ——, 2013 WL 610904 at *2. Consequently, we found the mortgagor, who had allowed the statutory redemption period to lapse, incapable of "demonstrat[ing] prejudice from the non-posting." *Id.* Post- *Kim*, Michigan mortgagors seeking to set aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability), *cf. Livonia Properties*, 399 Fed.Appx. at 102, in the same way that those seeking a set-aside based on § 600.3208 (e.g., lack of actual notice) already must do.

> [FN6. "*Void ab initio*" is defined as "null from the beginning, as from the first moment when a contract is entered into." By contrast, "voidable" is defined as "valid until annulled; especially, (of a contract) capable of being affirmed or rejected at the option of one of the parties."
>
> *Kim*, 825 N.W.2d at 330 n. 2 (alterations and internal citations omitted); *see* Black's Law Dictionary 1709 (9th ed.2009).]

> [FN7. Before turning to that issue, the Michigan Supreme Court rejected the state trial court's conclusion that the mortgage was not

9

> subject to § 600.3204(3)'s recording requirement because the mortgagor had obtained the mortgage by "operation of law." *Kim*, 825 N.W.2d at 333–36.]

*Id.* at 360-62.

In applying this analysis, the court in *Conlin* found that the plaintiff's theory, i.e., that MERS lacked the capacity to assign the mortgage, could not support the plaintiff's action to set aside the foreclosure sale of his property. *Id.* at 362. As the court explained:

> Even were the assignment from MERS to U.S. Bank invalid, thereby creating a defect in the foreclosure process under § 600.3204(1)(d), Plaintiff has not shown that he was prejudiced. He has not shown that he will be subject to liability from anyone other than U.S. Bank; he has not shown that he would have been in any better position to keep the property absent the defect; and he has not shown that he has been prejudiced in any other way. Additionally, he has also failed to make the clear showing of fraud in the foreclosure process required to challenge the foreclosure after the expiration of the six-month redemption period. *See also Sweet Air*, 739 N.W.2d at 662 (rejecting a claim of foreclosure-defect prejudice where the party seeking the set-aside was "not timely in challenging the validity of the foreclosure sale. . . [and] made no effort to redeem"). Therefore, as the statutory redemption period has lapsed and Plaintiff has suffered no discernible prejudice, the district court was correct to find that Plaintiff's claim was not actionable.

*Id.*

Similarly, in this case, even if the assignment from MERS to BONY was invalid, thereby creating a defect in the foreclosure process under M.C.L. § 600.3204(1)(d), plaintiff has not alleged that he was prejudiced. While plaintiff claimed various damages which arose from the alleged fraudulent assignment, *see* First Amend. Compl. at ¶¶ 36 and 43, plaintiff did not allege that he suffered any prejudice as discussed in *Conlin*, i.e., that due to the alleged fraudulent assignment, he will be subject to liability from someone other than BONY (i.e., double liability) or that he would have been in any better position to keep the Property absent the assignment. *Id.* at 362. On the contrary, plaintiff admitted in the First Amended Complaint that his problems began long before MERS assigned the Mortgage on July 21, 2011. In March 2010, more than one year before the

10

assignment, plaintiff became unable to make his mortgage payments and went into default. First Amend. Compl. at ¶ 15. The First Amended Complaint is mute with respect to any allegation of double payment incurred or why he was unable to become current on his payments or redeem the Property in a timely manner. In short, plaintiff's First Amended Complaint does not allege that he lost a "potential opportunity to preserve some or any portion of his interest in the property" due to the alleged invalid assignment from MERS to BONY. *Id.* at 362, quoting *Lessl*, -- Fed. Appx --, 2013 WL 610904, and *Jackson*, 162 Mich. App. at 756, 413 N.W. 2d at 101. Accordingly, defendants' motion to dismiss should be granted.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 40) be **GRANTED** and that this matter be **DISMISSED**.


Dated: September 26, 2013              /s/ Hugh W. Brenneman, Jr.
                                       HUGH W. BRENNEMAN, JR.
                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).